
FILED
ASHEVILLE, NC

AUG 0 8 2018

U.S. DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 1:18cr92 |
| | ) | |
| | ) | **BILL OF INDICTMENT** |
| vs. | ) | |
| | ) | Violations: |
| | ) | 26 U.S.C. § 7201 |
| JAMES E. MACALPINE, | ) | 26 U.S.C. § 7212(a) |
| Defendant. | ) | |
| | ) | |

### THE GRAND JURY CHARGES:

### INTRODUCTORY PARAGRAPHS

*Individuals and Entities*

1. At all times relevant to this Bill of Indictment, JAMES E. MACALPINE, a resident of Buncombe County, was the owner/operator of "James E. MacAlpine, DDS," an orthodontic practice located in Buncombe County, within the Western District of North Carolina. MACALPINE received his license to practice in the State of North Carolina in 1975, and has operated as an orthodontist in North Carolina since at least as early as 1992. At all times relevant to this Bill of Indictment, MACALPINE's orthodontic practice generated taxable income.

*History of Non-Filing and Non-Payment*

2. MACALPINE filed U.S. Individual Income Tax Returns (or "Forms 1040")—as required by federal law—for tax years 1992 through 1995, and paid the associated federal income taxes. However, MACALPINE failed to file federal tax returns for tax years 1996 and 1997. In 2000, the Internal Revenue Service ("IRS") performed an examination using the available documents for those tax years and assessed taxes against MACALPINE.

3. MACALPINE also failed to file federal tax returns for tax years 1998, 1999, and 2000.

4. In or about August of 2001, MACALPINE was convicted in District Court for the State of North Carolina of five misdemeanor counts of failing to file or pay his North Carolina state income taxes for tax years 1996 through 2000. As part of the judgment, the state court ordered MACALPINE to file state and federal tax returns for the missing years and to pay the taxes.

5. Following that conviction, in or about December 2001, MACALPINE filed federal Forms 1040 for tax years 1998, 1999, and 2000, which he had previously failed to file. However, MACALPINE did not pay the federal income taxes he self-assessed for those years.

6. MACALPINE was placed on supervised probation for three years following his state convictions. While on probation, and for a short time thereafter, MACALPINE filed Forms 1040 and made the tax payments that he self-assessed on those forms. MACALPINE did this for tax years 2001, 2002, 2003, and 2004. However, through a later series of civil examinations, the IRS ultimately assessed additional tax liabilities for tax years 2002, 2003, and 2004, and MACALPINE did not pay those additional tax liabilities.

7. MACALPINE altogether failed to file Forms 1040 or to pay taxes for tax years 2005, 2006, and 2007. The same series of civil examinations mentioned in the preceding paragraph also determined that MACALPINE owed taxes for tax years 2005 and 2006. By July of 2008, the IRS had examined and assessed tax liabilities for each of tax years 1999, 2000, 2002, 2003, 2004, 2005, and 2006, and communicated those tax liabilities to MACALPINE.

8. In 2010, MACALPINE attempted to negotiate an offer in compromise with the IRS to pay a small portion of the taxes he owed to the United States Treasury. In connection with this offer in compromise, MACALPINE filed Forms 1040 for tax years 2008 and 2009. He paid his self-assessed federal income taxes for 2008 in full and for 2009 in part. MACALPINE also offered to pay the United States $253,412 to settle the approximately $1.8 million in back taxes, penalties, and interest he owed for tax years 1999, 2000, 2002, 2003, 2004, 2005, and 2006. The IRS rejected this offer, and eventually the negotiations ended unsuccessfully.

9. Following the failure of these attempts at settlement, MACALPINE failed to file Forms 1040 or to pay taxes for tax years 2010 through 2017.

10. In 2013, the United States filed a civil suit against MACALPINE to recover lost tax revenues that he failed to pay for tax years 1999, 2000, 2002, 2003, 2004, 2005, and 2006.

11. In 2014, the United States District Court for the Western District of North Carolina granted summary judgment in favor of the United States and ordered MACALPINE to pay the United States $1,962,354.11 in back taxes (plus statutory interest). MACALPINE has not made any voluntary payments toward this judgment.

*Attempts to Evade Payments and Assessments*

a. *Frivolous Filings and Declarations, and IRS Warnings*

12. Between April 2006 and May 2007, in connection with the series of civil examinations described in Paragraphs 6 and 7, MACALPINE submitted several frivolous documents and letters to the IRS in an effort to avoid his tax obligations. MACALPINE generally asserted, in these documents and letters, that he was not obligated to pay taxes, including, for example, a denial of his "political status as a United States Citizen." The IRS responded to MACALPINE's claims with letters informing him that his arguments were frivolous and warning him of possible criminal consequences for continued non-payment. The IRS sent at least three such letters—one in June 2006, another in March 2007, and yet another in April 2008.

13. On or about September 26, 2007, an IRS Revenue Officer (or "IRS-RO") met in person with MACALPINE and another person known to the Grand Jury regarding IRS efforts to recover the approximately $2 million in back taxes ordered by the United States District Court. During this meeting, MACALPINE claimed he was not a taxpayer, asserted that he was a non-resident alien, and raised other frivolous claims. The IRS-RO informed MACALPINE that the IRS would initiate collection enforcement efforts due to his non-compliance.

14. These and other efforts by MACALPINE to frustrate the series of civil examinations were obstructive in nature and made it more difficult for IRS

personnel to accomplish the object of those lawful examinations and the ensuing collection efforts.

15. As noted in paragraph 8 above, MACALPINE did attempt to negotiate an offer in compromise in and around 2010, but at a steep discount. That attempt was unsuccessful. Following this failure, the IRS began to focus on locating and garnishing assets to satisfy MACALPINE's unpaid tax debts.

   b.  *First Citizens Bank Account #3572*

16. MACALPINE opened a checking account (referenced herein as #3572) at First Citizens bank on October 3, 2008. Beginning at least as early as January 2010, MACALPINE used this First Citizens bank account (#3572) to process credit card deposits generated by his orthodontic practice. These credit card payments constituted taxable income.

17. Sometime in 2011, the IRS discovered this account and began collection efforts against it. On June 28, 2011, the IRS garnished this account in the amount of $4,581.69. The IRS applied additional garnishments of $557.71 and $45.47 on August 23, 2011, and September 30, 2011, respectively. On August 22, 2011, MACALPINE endorsed a cashier's check in the amount of $4,000.00 from his First Citizens account and deposited it into his account in the name of "Daylight Foundation Services" at RBC Bank. MACALPINE was the account holder for Daylight Foundation Services, which had no known operational purpose and no obvious relationship to his orthodontic practice. By August 29, 2011, MACALPINE had ceased using the First Citizens bank account to process credit card deposits.

18. Beginning September 1, 2011, MACALPINE shifted his credit card deposits to his SunTrust account (referenced herein as #8501).

   c.  *SunTrust Bank Account #8501*

19. The IRS had difficulty locating MACALPINE's SunTrust account. Although MACALPINE opened the account (#8501) on August 4, 2006, one of the digits of MACALPINE's social security number was incorrect in the bank's records, which rendered the account difficult to locate. The IRS identified the account sometime in late 2014 or early 2015 and began collection efforts against it, imposing levies on January 26 and 29, 2015 for $742.94 and $1,211.52, respectively.

20. Immediately after the imposition of the levies, MACALPINE ceased using the bank account and shifted his credit card deposit activities into a bank account he held at Self-Help Credit Union (SHCU) (herein referenced as #7510). MACALPINE closed the SunTrust account April 3, 2015.

21. MACALPINE had opened the SHCU account on or about September 5, 2007 (originally as a Coastal Federal Credit Union (CFCU) account, until Self-Help Credit Union later acquired CFCU). From 2010 until early 2015, MACALPINE maintained a balance of approximately $100 in the SHCU account, but that changed immediately after the imposition of levies against the SunTrust account. Beginning February 2, 2015, MACALPINE used the SHCU account for his credit card deposit activity related to his orthodontic practice. Each month thereafter, MACALPINE withdrew cash from the account nearly equal to the amount of credit card deposits. From February 2015 through at least as late as September 28, 2017, the only account activity in the SHCU account was credit card deposits and subsequent withdrawals.

   d. *Wachovia Securities Account #0744-1*

22. From at least August 2007 through at least April 2008, MACALPINE maintained an account at Wachovia Securities with an account number ending in 0744-1. Throughout that date range, the IRS issued a series of levies against the account. In response, MACALPINE spoke to a bank employee at Wachovia Securities and threatened to sue her for three times the value of any monies relinquished to the IRS as a result of the levies.

   e. *Other Means of Evasion*

23. In order to conceal assets from the IRS, MACALPINE held them in nominee names. For example, MACALPINE registered his personal vehicle, a 2003 Mercedes Benz, not in his own name, but to a company called "Freedor LLC" registered in New Mexico.

24. When his patients would pay for his orthodontic services in cash, MACALPINE often would choose not to deposit this cash into his bank accounts, in order to prevent IRS detection and collection efforts.

## COUNT ONE
### Evasion of Payment

26 U.S.C. § 7201

25. Paragraphs 1 through 24 are fully incorporated herein by reference.

26. From in or about April 2000 through in or about September 2017, in Buncombe County, within the Western District of North Carolina, and elsewhere, the defendant

JAMES E. MACALPINE

willfully attempted to evade and defeat the payment of income tax due and owing by him to the United States of America, for the calendar years 1999, 2000, 2002, 2003, 2004, 2005, 2006, and 2009, by committing the affirmative acts set forth in paragraphs 1 through 24, among others, in violation of Title 26, United States Code, Section 7201.

## COUNT TWO
### Interference with the Administration of Internal Revenue Laws
### 26 U.S.C. § 7212(a)

27. Paragraphs 1 through 24 are fully incorporated herein by reference.

28. Beginning in or about April 2006, and continuing thereafter up to and including September 2017, in Buncombe County, within the Western District of North Carolina, and elsewhere, the defendant

JAMES E. MACALPINE

did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws, that is, the aforementioned examination and collection efforts, all of which were authorized by 26 U.S.C. §§ 6201 *et seq.* and 6301 *et seq.*, by committing the following acts, among others:

(a) In April 2006, having received various summons for records in connection with the IRS civil examination for tax year 2002, MACALPINE filed a "Declaration of Political Intentions" with the Buncombe County Register of Deeds, as a part of a frivolous effort to assert non-taxable status;

(b) In May 2006, after receiving from the IRS a "Notice of Intent to Levy and Notice of Your Right to a Hearing," MACALPINE submitted a voluminous packet of materials to the IRS, in which he failed to comply with any prior document requests, returned documents previously mailed to him by the IRS, and frivolously asserted non-taxable status;

(c) In July 2006, after the IRS responded to his previous mailing by providing MACALPINE with information debunking his frivolous arguments and explaining that he was, in fact, obligated to pay his taxes, MACALPINE mailed another package in which he continued to claim he was not subject to the authority of the IRS;

(d) In September 2007, MACALPINE met with IRS personnel to discuss his outstanding tax liabilities, but failed to bring with him any of the documents requested by the IRS, failed to provide any of the information requested during the meeting, and continued to frivolously assert non-taxable status;

(e) In October 2007, as further described above, MACALPINE responded to learning of an IRS levy on his account at Wachovia Securities by calling and threatening an employee of Wachovia Securities, in an effort to dissuade Wachovia Securities from forwarding monies to the IRS; and

(f) Throughout the relevant time period, and as alleged above in Paragraphs 16 through 24, among others, MACALPINE repeatedly reacted to IRS levies on his assets and accounts by promptly shifting his wealth and income into different assets and accounts, in an effort to conceal his wealth and income.

29. MACALPINE committed each of the foregoing acts, as well as others referenced in paragraphs 1 through 24 of this Bill of Indictment, in violation of Title 26, United States Code, Section 7212(a).

A TRUE BILL



GRAND JURY

R. ANDREW MURRAY
UNITED STATES ATTORNEY

*[signature]* 0/b/o
DON GAST
ASSISTANT UNITED STATES ATTORNEY