UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO. 1:18-CR-92 |
| ) | |
| v. ) | **FACTUAL BASIS** |
| ) | |
| JAMES E. MACALPINE ) | |

NOW COMES the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the Plea Agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to the Plea Agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime. The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States may submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1. At all relevant times, JAMES E. MACALPINE, a resident of Buncombe County, was the owner/operator of "James E. MacAlpine, DDS," an orthodontic practice located in Buncombe County, within the Western District of North Carolina. MACALPINE received his license to practice in the State of North Carolina in 1975, and he has operated as an orthodontist in North Carolina since at least as early as 1992. At all relevant times, MACALPINE's orthodontic practice generated taxable income.

2. MACALPINE filed U.S. Individual Income Tax Returns (or "Forms 1040")—as required by federal law—for tax years 1991 through 1995, and paid most of the associated federal income taxes. However, MACALPINE failed to file federal tax returns for tax years 1996 and 1997. In 2000, the Internal Revenue Service ("IRS") performed an examination using the available documents for those tax years and assessed taxes against MACALPINE.

3. MACALPINE also failed to file federal tax returns for tax years 1998, 1999, and 2000.

4. In late 2001, MACALPINE pleaded guilty in District Court for the State of North Carolina to five misdemeanor counts of failing to file or pay his North Carolina state income taxes for tax years 1996 through 2000. As a part of the judgment, the state court ordered MACALPINE to file state and federal tax returns for the missing years and to pay the taxes.

5. In connection with that conviction, in or about November or December of 2001, MACALPINE therefore filed federal Forms 1040 for tax years 1996, 1997, 1998, 1999, and 2000, which he had previously failed to file. However, he did not pay the federal income taxes he self-assessed for those years.

6. For example, when MACALPINE filed his belated Form 1040 for 1999, he self-assessed approximately $39,064 in taxes due and owing. The Defendant made no payments when he filed his 1999 return and, over the years, his balance due accrued additional penalties and interest. As of October 15, 2018, his balance due for 1999, discounting levies and other payments applied by the IRS, had grown to $127,757.66.

7. Similarly, when the Defendant filed his belated Form 1040 for 2000, he self-assessed approximately $38,558 in taxes due and owing. The Defendant made no payments when he filed his 2000 return and, over the years, his balance due accrued additional penalties and interest. As of October 15, 2018, his balance due for 2000 had grown to $131,272.24.

8. In or around November of 2002, while he was on supervision in connection with his North Carolina convictions, the Defendant filed a Form 1040 for 2001 and self-assessed approximately $26,393 in taxes due and owing. That year, the Defendant timely paid his taxes.

9. In contrast, in or around December of 2003, while he was on supervision in connection with his North Carolina convictions, the Defendant filed a Form 1040 for 2002. For that year, the Defendant self-assessed approximately $20,106 in taxes due and owing, substantially lower than what he had self-assessed for the preceding years. The IRS selected MACALPINE's 2002 tax return for audit in 2005.

10. When the Revenue Agent (RA) assigned to conduct the examination of the Defendant's 2002 tax return attempted to make contact with the Defendant and to make requests for books and records to substantiate the Defendant's claimed deductions, the Defendant failed to meet with him or to produce any documentation. When the RA issued summonses to financial institutions, the Defendant moved to quash those summons, and the United States District Court repeatedly dismissed his motions to quash and denied his motions to reconsider. In March of 2006, while dismissing MACALPINE's second such motion to quash, a United States District Judge found that MACALPINE's repeated court filings could only be understood as an effort to harass IRS personnel, and advised MACALPINE that sanctions could result from any such conduct in the future.

11. After receiving that order from the United States District Court and thereby being put on notice of the consequences of harassing IRS personnel, MACALPINE began to inundate IRS personnel—both the RA working the examination for 2002 and Revenue Officers (ROs) working collections for MACALPINE's existing tax debts—with legally unfounded and factually inaccurate

2

correspondence. In early May of 2006, MACALPINE sent several IRS personnel a "Declaration of Political Intentions" in which he purported to revoke his own U.S. citizenship, suggesting that it meant he no longer owed taxes for years in which he himself had previously declared that he did owe taxes.

12. The claims MACALPINE made lacked legal support. IRS personnel responded to MACALPINE's arguments by providing him with resources explaining that his arguments were wrong and that the IRS considered them to be "frivolous." At the same time, the IRS provided MACALPINE with publications outlining the consequences for continued obstructionism, including potential criminal prosecution.

13. Despite those various notices, in mid-2006 and early 2007, MACALPINE sent several IRS personnel a long filing titled as a "Constructive Notice," in which he made more of the same variety of arguments. MACALPINE continued in this manner, responding to every advisement by the IRS that it considered his filings to be frivolous and obstructive, and that they would lead to civil and criminal consqeuences, with yet another round of the same sort of filings. MACALPINE's filings included, for example, an "amended" tax return for a number of tax years in which MACALPINE appeared to claim he was not subject to the tax laws because his "domicile" was "heaven," while on the same page listing his "current address" as being a condominium in Asheville, North Carolina.

14. MACALPINE knew that he owed income taxes to the IRS when he engaged in at least some of these activities. In recorded conversations with an undercover agent, in 2016, MACALPINE admitted that the objective of his filings was to irritate or annoy IRS personnel, slowing down their process so much that they would leave him alone. MACALPINE was successful in slowing, hindering and impeding the progress of IRS examination and collection activities against him, but he was not successful in his efforts to harass the IRS into abandoning his case altogether.

15. Ultimately, because MACALPINE failed to provide any substantiation whatsoever during the RA's examination for tax year 2002, the RA disallowed all of MACALPINE's claimed business expenses for that year, assessing an additional $62,189 in taxes. With interest and penalties, that unpaid balance reached approximately $179,019 by October 15, 2018.

16. The RA next opened examinations for MACALPINE's tax years 2003 and 2004. MACALPINE had filed tax returns for both years, self-assessing just $7,590 in taxes for 2003, and self-assessing $33,046 in taxes for 2004.

17. Again, when the RA conducting the examination attempted to make contact with MACALPINE to go over the basis for his claimed deductions and to evaluate MACALPINE's books and records, MACALPINE failed to meet with him or to produce any documentation, instead dodging appointments and inundating the IRS and other federal agencies, such as Health & Human Services, with frivolous filings of the type that he had already been warned, repeatedly, would lead to sanctions. Again, the RA disallowed MACALPINE's claimed business expense deductions for 2003 and 2004. As of October 15, 2018, the Defendant owed approximately $202,623.89 for 2003 and approximately $293,274.41 for 2004.

18. The Defendant did not file tax returns for 2005 and 2006. However, during each of those years, the Defendant reported substantial net income to financial institutions from which he was seeking loans and/or other personal benefits. Moreover, while the Defendant had begun representing to the IRS during the same time period that he had no social security number, had no taxpayer identification number, was not a U.S. citizen, and more, he regularly represented the opposite to banks, under penalty of perjury, when he was seeking access to financial benefits. The IRS conducted examinations for 2005 and 2006 and assessed additional taxes due and owing.

19. Ultimately, in 2014, the United States District Court entered a judgment that MACALPINE owed the IRS additional taxes, interest and penalties in the aggregate amount of approximately $1,962,354.11 for tax years 1999, 2000, 2002, 2003, 2004, 2005, and 2006.

20. The parties agree that the tax loss for all relevant conduct in this case, for guidelines purposes, is at least $1,500,000, but less than $3,500,000.

21. Throughout the period of 2000 through 2017, in addition to the foregoing affirmative acts of evasion described above, the Defendant also engaged in the following affirmative acts for the purpose of evading the payment of the taxes due and owing. For example:

   a. In June of 2011, the IRS began to levy MACALPINE's First Citizens bank account, which he had been using as the receiving account for credit card payments associated with his orthodontic practice, with levies for his various tax debts. Within a few weeks, MACALPINE: (1) transferred a considerable sum of cash to an RBC account in the name of a nominee, "Daylight Foundation Services," where the IRS thereafter had more difficulty finding the money because it was not in his name, and (2) shifted his practice's credit card deposit activity to an account at SunTrust where had previously opened an account under an inaccurate social security number, which made it more difficult for the IRS to locate that account.

   b. In October of 2014, in response to an IRS levy issued to First Data, the credit card processor for MACALPINE's practice, MACALPINE terminated his relationship with First Data and ceased using a credit card processor until he could shift his deposit activity, in January, to a new processor as-yet unknown to the IRS.

   c. In January 2015, in response to the IRS locating and levying the SunTrust account referenced above, MACALPINE shifted his deposit activity to an account at Self-Help Credit Union.

22. MACALPINE has testified, under oath, that these actions were taken for the purpose of avoiding his tax debts. MACALPINE was aware of his tax debts, prior to the initiation of criminal charges, when he engaged in at least some of the foregoing affirmative actions.

23. MACALPINE's actions as described above were voluntary, knowing, deliberate, and willful, and were not committed by mistake, accident, and/or for another innocent reason. MACALPINE admits to being guilty of the offense charged in Count One.

4

R. ANDREW MURRAY
UNITED STATES ATTORNEY

_____
DANIEL V. BRADLEY
ASSISTANT UNITED STATES ATTORNEY

## Defendant and Counsel Signature and Acknowledgment

I have read this Factual Basis and the Bill of Indictment in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis and the Bill of Indictment. I hereby certify that the defendant does not dispute this Factual Basis.

_____  DATED: 1/28/2019
Robert E. Nunley, Attorney for Defendant

I hereby certify that I do not dispute this Factual Basis.

_____  DATED: 1-28-19
James E. MacAlpine, Defendant