UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NO. 1:18-CR-92 |
| ) | |
| v. ) | **SENTENCING MEMORANDUM** |
| ) | |
| JAMES E. MACALPINE ) | |
| ) | |

**SENTENCING MEMORANDUM**
**OF THE UNITED STATES OF AMERICA**

NOW COMES the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, and files its Sentencing Memorandum.

**Introduction**

This is not the Sentencing Memorandum the United States hoped to submit in this case. The Court is familiar with the Defendant's long history as a tax protestor, but there was a window of time, leading up to and following the entry of the guilty plea in this case, during which the Defendant appeared to be a changed man. Defense counsel has summarized the Defendant's efforts to get right with the authorities, and those efforts were indeed commendable. Doc. 55 ¶¶ 5-7. The Defendant made substantial payments towards the forthcoming restitution judgment, and he seemed ready to distance himself from some of the individuals, like the tax protester Edward Wahler, who had encouraged him to go down the wrong path in the past.[1] Moreover, the Defendant provided what seemed to be a credible account of his state of mind throughout his long ordeal, *see* Doc. 55-2, and while it did not excuse his criminal conduct, it did cast his situation in a more sympathetic light.

---

[1] The Defendant has a long history with Wahler. In this Court's Case No. 1:08-CR-111, the Defendant pleaded guilty to a felony offense for harboring Edward Wahler as a fugitive. Moreover, the government believes that the Defendant has regularly taken advice from Wahler on how to fight the IRS, and even on how to disrupt and obstruct this investigation.

Page **1** of 14

The Defendant's most recent *pro se* filings put the lie to all of that. *See* Doc. 56, 57. He is back to his "flesh-and-blood man," "sovereign-citizen" type rhetoric, and it is impossible to square his latest missives with the contrite aspect he managed to convey to the government during the window of time referenced above. In his latest filing, the Defendant falsely claims that he has no attorney and has never had an attorney, *see* Doc. 57 at 1, and tries to relegate defense counsel to the role of "counsel for the CASE 1:18-CR92 trust," *see* Doc. 57 at 4, which is a nonsense concept. The Defendant is clearly back to working with Wahler, *see* Doc. 57 at 19, despite previously acknowledging that he knew Wahler's arguments were wrong, *see* Doc. 55-2, and he is now claiming that he was intimidated or defrauded into entering a plea of guilty in this case, *see* Doc. 57 at 4.

The substance of the Defendant's latest missive is as frivolous as ever, but the Defendant has succeeded in making one thing clear: He has not changed. He is not interested in accepting responsibility for what he has done. He would rather continue to point the finger at anyone and anything else, crying "foul." Had the Defendant's former path of contrition been a genuine one, the United States may well have recommended a downward departure or variance. However, in light of this latest development, the United States is requesting a statutory maximum sentence of 60 months.

## Discussion

Three items remain for the Court's consideration at sentencing. The first, to the extent the Defendant has raised it through his *pro se* filing, is the validity of the guilty plea. As explained herein, the plea is valid and final. The second item is the proper calculation of the guideline sentencing range. The Defendant made several objections, through counsel, to the Presentence Investigation Report ("PSIR") prepared by the United States Probation Office ("USPO"), and those objections will require resolution by the Court. Because the statutory maximum falls below the guideline range, some aspects of the guidelines dispute are merely academic, but the United States is addressing them

nonetheless, in recognition of the Court's obligation to calculate the range. The third and final item is the determination of a sentence that is sufficient but not greater than necessary to accomplish the purposes of the sentencing statute, which in this case is 60 months.

## **Validity of the Plea**

In his most recent filing, which was submitted *pro se* without leave of the Court, despite the fact that the Defendant is represented by counsel, the Defendant appears to argue that his guilty plea was the product of intimidation or fraud. The Defendant claims:

> I, James Edward MacAlpine, hereby and herewith declare on and for the Record, that I made a mistake when I allowed myself to be intimidated into agreeing to sign a plea bargain and plead guilty to the charges in the Case 1:18CR92 TRUST. The Case 1:18-CR-92TRUST is a constructive trust created upon fraudulent presumptions, and fraud vitiates all contracts, rendering the plea void *ab initio*.

Doc. 57 at 4. That claim is followed almost immediately by the Defendant's notarized signature.

The Defendant's claim that the guilty plea was the product of intimidation or fraud is baseless. This Court accepted the Defendant's guilty plea on February 25, 2019, based upon the representations and answers given by the Defendant during the Rule 11 proceeding held before the Magistrate Judge on February 4, 2019. During that Rule 11 proceeding, the Court asked the Defendant a series of questions under oath. Before questioning the Defendant, the Court confirmed that the Defendant understood the need to answer all of the Court's questions truthfully; that he knew he could be prosecuted for perjury for making any false statements; and that he was able to hear and understand the Court. Doc. 45 at 1. The Defendant testified that his mind was clear, and that he was not under the influence of any impairing substance. Doc. 45 at 2; Doc. 46. Then, the Defendant confirmed under oath that his plea of guilty was voluntary; that nobody made any promises to him (outside of the Plea Agreement), or threatened him in any way, to cause him to enter a plea of guilty against his wishes; and that he was entering a plea of guilty of his own free will. Doc. 45 at 6-7.

The Defendant has provided the Court with no reason to second-guess any of his previous statements under oath. Moreover, his new claim of intimidation and fraud does not appear to relate to any threat made by the government, or by the Court. Instead, it appears to relate to his frivolous assertions relating to the nature of this criminal proceeding and the Court's jurisdiction over him, and those arguments are non-starters. Once the Court has accepted a guilty plea, it cannot be withdrawn without a "fair and just reason," and the Defendant's frivolous attacks on the Court's jurisdiction provide neither a fair, nor a just, reason for releasing the Defendant from his plea.

## Guidelines Issues

### A. The USPO properly applied a 2-level increase to the Defendant's offense level, pursuant to U.S.S.G. § 2T1.1(b)(2), because the offense involved sophisticated means.

Section 2T1.1(b)(2) of the United States Sentencing Guidelines provides, "[i]f the offense involved sophisticated means, increase by 2 levels." U.S.S.G. § 2T1.1(b)(2). The commentary to Section 2T1.1 provides some additional guidance, explaining that, "[f]or purposes of subsection (b)(2), *'sophisticated means'* means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2T1.1, Application Note 5 (emphasis original). Furthermore, "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means." *Id.* In the PSIR, the USPO determined that the enhancement should apply based on the following portion of the Factual Basis document, which has been incorporated into the PSIR:

> 27. *Throughout the period of 2000 through 2017, in addition to the foregoing affirmative acts of evasion described above, the Defendant also engaged in the following affirmative acts for the purpose of evading the payment of the taxes due and owing. For example:*
>
>    a) *In June of 2011, the IRS began to levy **MACALPINE**'s First Citizens bank account, which he had been using as the receiving account for credit card*

> *payments associated with his orthodontic practice, with levies for his various tax debts. Within a few weeks, **MACALPINE**: (1) transferred a considerable sum of cash to an RBC account in the name of a nominee, "Daylight Foundation Services," where the IRS thereafter had more difficulty finding the money because it was not in his name, and (2) shifted his practice's credit card deposit activity to an account at SunTrust where had previously opened an account under an inaccurate social security number, which made it more difficult for the IRS to locate that account.*
>
> b) *In October of 2014, in response to an IRS levy issued to First Data, the credit card processor for **MACALPINE**'s practice, **MACALPINE** terminated his relationship with First Data and ceased using a credit card processor until he could shift his deposit activity,in January, to a new processor as-yet unknown to the IRS.*
>
> c) *In January 2015, in response to the IRS locating and levying the SunTrust account referenced above, **MACALPINE** shifted his deposit activity to an account at Self-Help Credit Union.*

*See* Doc. 53 ¶¶ 27, 38; Doc. 44 ¶ 21. The Defendant objects to the application of the enhancement, arguing that the conduct described above is not the sort of "especially complex or especially intricate offense conduct" that should trigger it. *See* Doc. 52 ¶ 4.

The Fourth Circuit has acknowledged that "the average criminal tax fraud involves some concealment; 'sophisticated' tax fraud must require more." *United States v. Edwards*, 744 Fed. App'x 825, 826 (4th Cir. 2018) (quoting *United States v. Jimwright*, 683 F.3d 471, 486 (4th Cir. 2012)). "However, the level of concealment necessary to support a sophisticated means enhancement is not high—a 'court need only find the presence of efforts at concealment that go beyond (not necessarily far beyond) the concealment inherent in tax fraud.'" *Id.* (again quoting *Jimwright*, 683. F.3d at 486). Put another way, "courts can find that a defendant used sophisticated means even where he did 'not utilize the most complex means possible to conceal his fraudulent activit[y].'" *United States v. Merilla*, 640 Fed. App'x 239, 241 (4th Cir. 2016) (quoting *Jimwright*, 683 F.3d at 486).

In this case, the Defendant was not hiding his money in a mattress. Nor was he merely failing to disclose a relevant account to the IRS, which would be an ordinary form of concealment. The Defendant engaged in a years-long game of hide-and-seek with the IRS collections employees tasked with finding and levying his assets. He never cooperated with them in finding his accounts, and whenever they did find an account, he would move his money to a different one. On at least one occasion, the Defendant moved his money into an account he had previously opened under the name of a shell company, "Daylight Foundation Services," making it harder for the IRS to find. On another occasion, when the IRS made contact with the credit card processor serving his business, he shifted his business into cash, and then opened an account with a new credit card processor. On a third occasion, he moved his money into an account opened under an inaccurate SSN.

The Defendant claims that the inaccurate SSN was unintentional, and it might have been. However, even if that were true, it would not be dispositive, because the game of bank-account hide-and-seek itself is the "sophisticated means" that supports the enhancement, and there is no doubt that the Defendant was playing it. *See, e.g., Edwards*, 744 Fed. App'x at 826 ("We conclude that the use of fake charities as shell entities is sufficient to support the application of the sophisticated means enhancement"); *United States v. Boyer*, No. 98-4284, 1998 U.S. App. LEXIS 30664 at *6-7 (4th Cir. Dec. 2, 1998) (holding that a defendant's conduct "clearly supports the two-level enhancement" where "[t]hrough a series of transactions, [the defendant] attempted to hide assets from the IRS in order to avoid paying the assessment."). In short, the "sophisticated means" enhancement applies.

### B. The USPO properly applied a 2-level increase to the Defendant's offense level, pursuant to U.S.S.G. § 3C1.1, because the Defendant obstructed justice.

Section 3C1.1 of the United States Sentencing Guidelines provides, "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with

respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1. The PSIR concludes that the Defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation of the instant offense[,]" and applied the enhancement. Doc. 53 ¶ 41. The Defendant has objected, arguing that the Defendant's conduct vis-à-vis the IRS's assessment and collection efforts over the years, as detailed in the Factual Basis, is insufficient to warrant the application of the enhancement. Doc. 52 ¶ 5.

On that point, the Defendant is probably correct. Section 3C1.1 covers obstructive conduct that occurs in relation to "the investigation, prosecution, or sentencing of the instant offense of conviction[.]" U.S.S.G. § 3C1.1; *see also* U.S.S.G. § 3C1.1 Application Note 1. The Defendant's conduct vis-à-vis the IRS, as detailed in the Factual Basis, was certainly obstructive in nature, but it occurred in relation to the IRS's administrative efforts to assess and collect his taxes, rather than in connection with the criminal investigation and prosecution of the offense of conviction. Conduct that precedes the initiation of a criminal investigation is covered by Section 3C1.1 if it is "purposefully calculated, and likely, to thwart the investigation and prosecution" of the offense of conviction, but the United States has no evidence that such was the Defendant's motive here, as opposed to a desire to avoid paying his taxes. *See* U.S.S.G. § 3C1.1, Application Note 1.

That said, the Section 3C1.1 enhancement still applies, just for a different reason. Throughout this proceeding, and particularly prior to entering his plea of guilty, the Defendant bombarded the government, and the Court, with nonsense. It is every Defendant's constitutional right to mount a vigorous defense, but "there is no right to file frivolous motions, notices, and other

Page **7** of **14**

Case 1:18-cr-00092-MR-WCM   Document 58   Filed 08/15/19   Page 7 of 14

documents, particularly when the intent of doing so is solely to delay and disrupt judicial proceedings." *United States v. Goldberg*, 937 F. Supp. 1121, 1134 (M.D. Pa. 1996).

This particular Defendant has known for years that the kinds of arguments he presented to the Court throughout this prosecution were unfounded. For one thing, he readily admits it. *See* Doc. 55-2. For another, federal judges have repeatedly told him so. For example, in 2005 and 2006, the Defendant attempted to intimidate the IRS collections agents who were working his administrative case by filing actions against them in federal court. Those actions were assigned to United States District Judge Lacy Thornburg. In batting down the second such filing made by the Defendant in a matter of two months, Judge Thornburg informed the Defendant:

> **The Court considers the Petitioner's conduct in filing this matter to be frivolous and done to harass the IRS and/or the judicial system.** Pro se litigants do not have an absolute and unconditional right of access to the courts in order to prosecute frivolous, malicious, abusive or vexatious motions. *Demos v. Keating*, 33 Fed. Appx. 918 (10th Cir. 2002); *Tinker v. Hanks*, 255 F.3d 444, 445 (7th Cir. 2001); *In re Vincent*, 105 F.3d 943 (4th Cir. 1997). **The Petitioner is hereby warned that future frivolous filings may result in the imposition of sanctions pursuant to Rule 11 and this Court's inherent powers. Such sanctions may include directives of a non-monetary nature, an order to pay a penalty into court, an order directing payment of reasonable attorneys' fees incurred, and/or an injunction against making any filings within the Western District of North Carolina.** *Vestal v. Clinton*, 106 F.3d 553 (4th Cir. 1997); *Foley v. Fix*, 106 F.3d 556 (4th Cir. 1997); *In re Head*, 19 F.3d 1429 (table), 1994 WL 118464 (4th Cir. 1994); 28 U.S.C. §1651(a); *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984).

*See* W.D.N.C. Case No. 1:06-MC-11, Doc. 2 at 3-4 (issued March 16, 2006) (emphasis added). In other words, as early as 2006, the Defendant was put on notice that his complaints about the IRS are frivolous, and that the kinds of filings he has habitually submitted to the Court are a form of harassment of the judicial system.

That lesson did not stick. The Court is familiar with the Defendant's actions in this criminal proceeding, and the United States will not recount all of them here. It suffices to say that he has engaged in a classic "flesh-and-blood man" or "sovereign-citizen" campaign to obstruct these

proceedings, challenging the Court's jurisdiction at every turn, and even attempting to obfuscate the plain meanings of the everyday terms that define each participant's role in a federal court. At one point, the Defendant filed a vexatious civil lawsuit against former Magistrate Judge Dennis Howell, AUSA Don Gast, and IRS-CI Special Agent Jennifer Berry. *See* W.D.N.C. Case No. 1:18-CV-223.

It is true that, as referenced above, there was a time when the government believed that the Defendant had experienced a change of heart. Had he stayed on that path, the government might not have sought an obstruction enhancement. However, the Defendant's most recent filings show that he has not changed, and that he is still intent on disrupting these proceedings. Doc. 56; Doc. 57. It is no longer possible to believe that the Defendant is acting in good faith.

The Defendant's conduct in this proceeding is almost identical to that of the defendant in *United States v. Taylor*, 509 Fed. App'x 205 (4th Cir. 2013). There, the Court of Appeals confirmed that similar "flesh-and-blood man" and "sovereign-citizen" type filings were frivolous, and that they were designed to hinder or disrupt the judicial proceedings. *Id.* at 212-13. The Court of Appeals acknowledged that the Taylor's conduct was "not identified in the 'Examples of Covered Conduct' in the Commentary to § 3C1.1," but pointed out that "the Commentary makes clear that the examples given are 'a non-exhaustive list.'" *Id.* at 212. The Court of Appeals agreed with the district court that "disruptive conduct, resulting in the expenditure of administrative and judicial time and expense, was sufficiently obstructive to warrant the enhancement under § 3C1.1[,]" even where the type of disruptive conduct at issue was not specifically listed in the guidelines commentary. *Id.* Outside of the Fourth Circuit, at least two other federal courts have reached similar conclusions on similar facts. *See, e.g., United States v. Thomas*, No. 4:11-cr-34-DPM, 2014 U.S. Dist. LEXIS 14603 at *9 (E.D. Ark. Jan. 31, 2014) (applying a 3C1.1 enhancement in part to account for the defendant's "frivolous filings and notices about being a Moor and not subject to the jurisdiction of the United States"); *Goldberg*,

937 F. Supp. at 1134 (holding that the defendant "obstructed justice through the repeated filing of frivolous motions, often filed *pro se* without leave of court, through misrepresentations to the court, and through causing the court to convene hearings with no substantial basis, all of which conduct was intended to and did have the effect of delaying and disrupting these proceedings, or was an attempt to do so in any instance in which no actual obstruction occurred").

In short, the Defendant has engaged in a campaign of frivolous filings to hinder or disrupt these proceedings, and the "obstruction of justice" enhancement applies.

### C. The Defendant should not receive any reduction to his offense level, pursuant to U.S.S.G. § 3E1.1, for the acceptance of responsibility.

The PSIR contemplates the Defendant receiving a 2-level reduction in his offense level for acceptance of responsibility, given that the Defendant "pled guilty and admits to his involvement in the offense." Doc. 53 ¶ 44. The PSIR granted the Defendant that benefit even though it found that he obstructed justice, which is a rare, but not impossible, combination. *See* U.S.S.G. § 3E1.1, Application Note 4. At the time of the PSIR's release, the United States agreed with the USPO's assessment that the Defendant should receive a reduction for the acceptance of responsibility, and therefore did not object. However, the Defendant is no longer accepting responsibility, instead claiming that this prosecution—including his plea—is invalid, the product of some sort of fraud.

The Defendant's claim that his plea was the product of intimidation and fraud is, of course, baseless, but the fact that he is trying to make it shows that he is still trying to evade criminal responsibility. Even a person who enters a plea of guilty prior to trial and truthfully admits to the relevant conduct can lose the acceptance of responsibility reduction if he engages in "conduct … that is inconsistent with such acceptance of responsibility." *See* U.S.S.G. § 3E1.1, Application Note 3. In other words, "[a] defendant who enters a guilty plea is not entitled to an adjustment under [Section

3E1.1] as a matter of right." *Id.* The government recognizes that it is ultimately a moot point, because the maximum sentence is 60 months, but a defendant should not get acceptance-of-responsibility credit for his plea when he frivolously attacks that same plea before sentencing.

> **D. The Defendant should receive two criminal history points for committing part of the instant offense while on probation for the offenses reflected in Paragraph 52 of the PSIR.**

The PSIR adds 2 points to the Defendant's criminal history score because he committed the instant offense while he was on probation in connection with the state case identified in Paragraph 52 of the PSIR. Doc. 53 ¶ 56. The Defendant objects, but the PSIR is technically correct. As detailed in the Factual Basis, the Defendant did file tax returns for several years while he was on state probation, but he did not pay the taxes he self-assessed. Doc. 44 ¶¶ 5-9. The existence of an unpaid tax debt, here established by the self-assessment and non-payment of taxes, is one of the elements of the crime of tax evasion. Moreover, based on the results of a later examination detailed in the Factual Basis, *see* Doc. 44 ¶¶ 9-15, MacAlpine under-assessed his taxes on the return he filed during his probationary period for tax year 2002. The government agrees with the Defendant that most, if not all, of the affirmative acts of evasion identified in the Factual Basis did not occur until much later, but that is not the only element of the offense.

> **E. Conclusion as to guideline sentencing range.**

If the Court agrees with the United States on all of the foregoing, the guideline sentencing range would be 78 to 97 months. However, the statutory maximum penalty is 60 months, and that becomes the guideline term of imprisonment. *See* U.S.S.G. § 5G1.1(a).

## Sentencing Statute

The Court's final task is to determine a sentence that is sufficient, but no greater than necessary, to satisfy the purposes of the sentencing statute. *See* 18 U.S.C. § 3553(a). In this case,

an appropriate sentence is 60 months. Defense counsel has argued for a non-custodial sentence and makes a number of fair points, particularly in relation to the negative collateral consequences of the Defendant's imprisonment. *See* Doc. 55 ¶ 8. However, the problems identified by defense counsel are problems created by the Defendant. It is the Defendant who brought these consequences down on the people who are close to him, and the Court is not obligated to fix them.

A holistic review of the sentencing factors makes clear that a non-custodial sentence would be inappropriate, and that 60 months is a more suitable result. All of the factors are relevant, but in this case, the following factors stand out:

> **A.     3553(a)(1):   The nature and circumstances of the offense and the history and characteristics of the defendant.**

It is clear that the Defendant, in his long life, has done some good for the people around him. That is commendable. However, the offense of conviction was not a one-time slip-up. The Defendant was engaged in criminal acts of tax evasion for well over a decade, and it is difficult to give the Defendant credit for an "otherwise admirable life" when so much of his life was spent breaking the law in connection with the offense of conviction.[2] Moreover, given the Defendant's status as an orthodontist, and his often-considerable income, the tax loss here is massive, approaching $2 million. In other words, this case is not about the government coming down hard on a vulnerable individual. It is about a wealthy man who wanted to be even wealthier. There is nothing sympathetic about that.

> **B.     3553(a)(2)(A)–(C):   The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.**

---

[2] This is also not his first criminal conviction.

Disrespect for the rule of law is a fundamental component of the Defendant's offense, particularly in the way he committed it. Even now, the Defendant is challenging this Court's authority over him. It is critical to demonstrate, both to this Defendant and to the public at large, that the "flesh-and-blood man" and "sovereign-citizen" type movements of which the Defendant is a part are frauds, plain and simple, and that the "legal" doctrines they preach are pure nonsense. The sentence in this case should deter any person who should know better—or, as in this case, a person who clearly *did* know better—from falling into the trap of thinking they can game their way out of responsibility for their actions by adopting the language of these movements.

### C. 3553(a)(4): The sentencing range established by the United States Sentencing Guidelines.

Because of the statutory maximum, the guideline term of imprisonment is 60 months. However, without the statutory maximum, the range would have been much higher. A statutory maximum sentence of 60 months is therefore already a less severe sentence than the one called for by a traditional guidelines assessment. To vary downwards to a non-custodial sentence would be to go far below where a traditional guidelines assessment would place an offender like this.

### D. 3553(a)(7): The need to provide restitution to any victims of the offense.

The Defendant has pointed out, fairly, than a lengthy period of incarceration will make it difficult for him to pay restitution. That is true. However, given the Defendant's age and the size of his debt, it is unlikely that he will ever make significant progress towards repaying his debt, anyway.

### Conclusion

In conclusion, the United States respectfully requests that the Court sentence the Defendant to 60 months of imprisonment.

Respectfully submitted, this the 15th day of August 2019.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

By: /s/ *Daniel V. Bradley*
Daniel V. Bradley
Assistant United States Attorney
100 Otis St., Room 233
Asheville, North Carolina 28801
(828) 259-0644
(704) 344-6629
E-mail: daniel.bradley@usdoj.gov